**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4974

MERV BERNARD JONES,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CR-96-136)

Submitted: December 30, 1997

Decided: February 23, 1998

Before WILKINS and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael Dana Eberhardt, Suffolk, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Janet S. Reincke, Assistant United
States Attorney, Robert S. Reverski, Jr., Third Year Law Student,
Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Merv Bernard Jones appeals his conviction for two counts of possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1994), two counts of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) (West 1976 & Supp. 1997), and two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C.A. § 922(g) & § 924(a)(2) (West 1976 & Supp. 1997). We affirm.

Jones' convictions arise from two separate incidents. On April 25, 1996, the Suffolk Police received an anonymous phone call reporting that a group of black males were selling drugs in the vicinity of 130 S. Capitol Street, Suffolk, Virginia. The caller stated that one black male wearing a cap, black shirt, and army fatigue pants was doing the majority of the selling. Officer D.L. White responded to a police dispatch reporting the alleged drug dealing. While driving to S. Capital Street, Officer White received another dispatch reporting that the same group of black males was now walking toward E. Washington Street. As Officer White turned onto S. Capital Street he spotted a single group of black males approaching E. Washington Street.

Officer White got out of his car, walked up behind Jones, who was wearing the clothing described in the police dispatch, and said, "Hey, I need to talk with you a minute." Jones responded, "You don't need to talk to me" and kept walking toward E. Washington Street. Officer White then told Jones a few more times that he needed to speak with him, and at some point tapped Jones on his shoulder in an effort to get his attention. Jones ignored Officer White and continued walking down the street. Investigator Coleman then arrived on the scene and immediately recognized Jones as the subject of an ongoing police investigation. Coleman knew from confidential informants that Jones often sold cocaine on S. Capital Street and that Jones carried a fire-

2

arm. Coleman also noticed that Jones' right hand was open but his left hand was clenched. Based on his experience, Coleman knew that drug dealers often conceal drugs in a clenched fist so that they can easily dispose of the drugs if encountered by police. Coleman then got out of his car and said, "Hey Merv, I need to speak with you for a minute." Jones, still walking, looked at Coleman briefly, and then turned away and responded, "You got a warrant, you don't need to speak with me." Coleman made repeated requests for Jones to stop walking, stating that he needed to speak with him. Jones continued to ignore the officers. Officer White and Coleman then seized Jones and proceeded to frisk him. After discovering a razor blade in Jones' clenched hand, the officers conducted a full search which uncovered sixty-two grams of crack cocaine and a .38 caliber revolver.

On June 27, 1996, Coleman and another police officer arrested Jones pursuant to an arrest warrant issued as a result of Jones' arrest on April 25. A search incident to arrest uncovered 11.87 grams of crack cocaine wrapped in small plastic bags, a .25 caliber handgun, and $330 in currency.

Jones raises six issues on appeal. First he contends the officers did not have the requisite level of suspicion necessary to justify the April 25 stop under Terry v. Ohio, 392 U.S. 1 (1968). To conduct a Terry stop and frisk, an officer need only have reasonable suspicion supported by articulable facts that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). At the time Coleman made the decision to stop Jones he possessed the following knowledge: (1) the police had received an anonymous tip that an individual wearing clothing that matched Jones' clothing was selling drugs on S. Capital street, a known drug area; (2) he had previously received tips from reliable confidential informants that Jones often sold drugs on S. Capital Street and that he carried a firearm; (3) Jones had one fist clenched, behavior Coleman knew to be consistent with drug dealing; and (4) Jones was acting in an evasive manner and appeared nervous. Reviewing the claim de novo, see United States v. Perrin, 45 F.3d 869, 871 (4th Cir. 1995), we find that these factors provided Coleman with adequate reasonable suspicion to stop and frisk Jones to alleviate his concern that Jones posed a threat to his safety.

Prior to trial Jones moved for severance of the counts stemming from his arrests on April 25, 1996, and June 27, 1996. Jones alleged

3

that joinder of the counts could lead the jury to find him guilty on charges from one incident and then find him guilty of the other charges because of his criminal disposition. A district court "has a wide range of discretion in matters of severance which should be left undisturbed, absent a showing of clear prejudice or abuse of discretion." United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). It is within a district court's discretion to deny a motion to sever cases involving identical offenses that occur over a short period of time. See id. The three counts stemming from Jones' arrests were identical, the two incidents occurred approximately two months apart, and both involved searches that uncovered crack cocaine and a firearm. Accordingly, the district court properly exercised its discretion to deny Jones' motion for severance.

We give substantial deference to the district court's evidentiary rulings and will not reverse absent a clear abuse of discretion. United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994). Jones alleges that the district court erred in allowing Officer White and Coleman to testify that they received a police dispatch that an individual was selling drugs on S. Capital Street and that they knew this to be a high crime area. Initially, we note that the dispatch evidence was not hearsay because the district court specifically told the jury that it was to consider the evidence only to understand why the officers went to S. Capital Street and not for the truth of the matter asserted. See Fed. R. Evid. 801(c); United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985). Further, we agree with the district court's finding that the testimony about the police dispatch was relevant to the understanding of why Officer White and Coleman went to S. Capital Street.

A district judge may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. We find that the probative value of providing the jury with a complete picture of the events leading up to Jones' first arrest is not substantially outweighed by any possible prejudice stemming from testimony concerning the police dispatch. Hence, we find that the district court did not abuse its discretion in admitting evidence of the police dispatch. Further, we find no prejudicial error from the admission of testimony that S. Capital Street is located in a known drug area. See United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980).

4

Jones next claims that the district court abused its discretion by allowing into evidence a chemist's laboratory report of analysis which summarized the chemist's trial testimony describing several prosecution drug exhibits. Under Fed. R. Evid. 611(a) a district court may admit summary testimony into evidence if it will help the jury to better understand the evidence presented. See United States v. Johnson, 54 F.3d 1150, 1162 (4th Cir. 1995). It is important, however, that opposing counsel is provided with the opportunity to cross-examine the witness whose summarized testimony has been introduced in order to "alleviate any danger of inaccuracy or unfair characterization." United States v. Paulino, 935 F.2d 739, 753 (6th Cir. 1991). In this case, the district court determined that the laboratory report would aid the jury in following the case. Jones' counsel then had ample opportunity to cross-examine the chemist concerning the validity of the laboratory report. Accordingly, we find that the district court acted within its discretion by permitting the United States to introduce the chemist's report into evidence under Rule 611(a).

We review the district court's decision whether or not to strike superfluous language from an indictment for an abuse of discretion. See United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979). Jones argues that the district court abused its discretion by not striking from the superseding indictment the term "crack" and the references to specific quantities of drugs. Crack is the specific form of cocaine base that the United States charged Jones with possessing and intending to distribute. The United States offered expert testimony at trial identifying the substance as crack and explaining to the jury the difference between powder cocaine and crack cocaine. In light of this evidence presented to the jury, we cannot agree with Jones' allegation that the indictment's use of the term crack prejudiced him. Hence we find that the district court properly refused to strike the word crack from Jones' indictment.

We also find that the district court did not abuse its discretion by refusing to strike the drug quantity references in Jones' indictment. The district court recognized that as part of its burden of proving that Jones had the intention to distribute, the United States would introduce evidence of the specific quantities of crack cocaine found on Jones each time the police arrested him. Hence, the district court determined that any quantity references in Jones' indictment merely

5

helped explain the charges to the jury and would not prejudice Jones. Accordingly, the district court properly exercised its discretion not to strike the quantity references from Jones' indictment.

Regarding Jones' challenge to the sufficiency of the evidence, we ask whether "`any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt.'" Johnson, 54 F.3d at 1153 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We "`construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced.'" Id. at 1153 (quoting United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991)). The evidence adduced at trial was that at the time of Jones' arrest on June 27, 1996, the police found him in possession of 11.87 grams of crack cocaine packaged in separate bags, a .25 caliber handgun, and $330 in cash. The United States put forth expert testimony that personal consumption of crack cocaine may reach approximately one gram per day. Based on this evidence, we find that a rational juror could have found Jones guilty of knowingly possessing with the intention to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1994).

We therefore affirm Jones' conviction. We dispense with oral argument because the facts and legal contentions are adequately presented before the court and argument would not aid the decisional process.

AFFIRMED

6